## THE FREEHOLDERS OF MONMOUTH COUNTY *vs.* THE RED BANK AND HOLMDEL TURNPIKE COMPANY.

1. The title to the public bridges constructed by a county, is vested in the board of chosen freeholders of that county. It is a corporation created for the purpose of representing the county and holding its property, and suits for the protection of such property are properly brought in the name of that corporation.

2. The bridges belonging to a county are public property, held for public use, and are not within the protection of the constitutional provision which forbids private property to be taken for public use without compensation. The legislature have power to direct in what manner such bridges shall be appropriated to public use; and may authorize them to be taken by a turnpike company for part of its road, without compensation.

3. Where the charter of a turnpike company authorizes it to construct a road on a route which includes a public county bridge, and requires it to pay to the owners of lands over which the road should pass, all damages sustained, the compensation clause applies to such bridge, which is included in the term *land*, and of which the county is the owner.

4. Even if the damages by taking the county bridge would be only nominal, the county is entitled to restrain the turnpike company from using it as part of their road, until the damages are assessed and the title of the bridge vested in the company, so that the county may be relieved from the obligation to repair it.

5. Where a turnpike company is entitled to take toll on two continuous routes of their road when finished, and a county bridge not purchased or acquired, forms part of such two continuous routes, the taking tolls on that section will be restrained until the bridge is acquired.

The bill in this case was exhibited for an injunction to restrain the defendants from using, as part of their turnpike, a bridge constructed by the complainants over the Shrewsbury river, and from charging toll for traveling thereon.

The bridge in question was built by the complainants, by authority of the legislature, in the year 1862, and was part of the public road leading from Red Bank to Holmdel. The defendants were incorporated March 24th, 1864, with power to construct a turnpike road on and along the public highway from Red Bank to Holmdel, being required to pay the owners of the lands over which said highway then passed, all damages occasioned by the construction of the turnpike road, limiting the title to be acquired in the land, to the right of way only.

The act authorized them to take toll at certain rates per mile when the road was finished, and to place four gates thereon; and when any two consecutive miles were finished, to erect a gate and take toll therefor. The company were required to make bridges along the line of their road, not less than twenty feet in width. The bridge of the complainants was eighteen feet wide, and over seven hundred feet long. The defendants finished two consecutive miles of their road, from its beginning at Red Bank, in 1865, and set up a gate there, and began, and have continued, to take tolls for that part. The bridge of the complainants was part of the first mile of their road, and was a part on which they charged and received tolls.

A supplement, approved February 8th, 1866, enacts that this bridge shall be deemed of sufficient width for the requirements of the charter. This supplement also increases the rates of toll.

The defendants have never had the value of the bridge, or

the damages by taking the same, assessed, and have not obtained the consent of the complainants to use the bridge; but the complainants, on the contrary, have forbidden the use of it.

*Mr. J. Parker*, for complainants.

*Mr. R. Allen, jun.*, and *Mr. H. S. Little*, for defendants.

THE CHANCELLOR.

The bridge in question belonged to the complainants; they are trustees for the county, and incorporated to represent it; the legal title to all property belonging to the county, is vested in them. This is clearly the object and effect of the act incorporating them. *R. S.* 182; *Nix. Dig.** 109. By the forty-first section of that act they have full power to sell and convey all such property. It is their duty to protect it, and to bring suit for that purpose. If relief can be had in this case, they are the proper parties to seek it.

The charter of the defendants (*Acts of* 1864, *p.* 398, § 11,) requires them to construct their road over this bridge; they were, by that provision, clearly entitled to take it. And had the legislation ended here, it would, as seems to me, have authorized them to occupy it without compensation. This bridge belonged to the complainants as trustees for the county. It was held by the public, and for public use. It was not, therefore, within the letter or meaning of either of the provisions of the constitution of the state, which prohibit *private* property from being taken for public use. The property of a municipal corporation, not held for public use, might be protected; but not property like this, when taken for the use to which it was dedicated. The legislature could have authorized the defendants to take the public road, including the easement or right of way which the public had acquired over lands of individuals, without further compensation to the owners of the fee. This was held by the Supreme Court, in the case of *Wright* v. *Carter*, 3 *Dutcher* 76,

---

* *Rev.*, p. 127.

and it is understood that this part of the opinion of the Supreme Court was approved by the Court of Errors, although their judgment, as to the right to erect a toll-house, was reversed.

But the legislature did not choose to exercise this prerogative in this case, but directed that the defendants should pay to the owners of lands over which the highway then passed, all damages sustained. Complainants owned this bridge, and a bridge, like a castle, is *land ;* and for this purpose, that is, to make it land, it is immaterial whether complainants owned the fee of the land in the bed of the river on which it was erected, or only the easement of maintaining a bridge there ; it is within this part of the provisions of the act, and the defendants are bound to pay the complainants their damages, or their road does not extend, and is not completed, over the bridge.

The damages may not be of any great amount. I should much incline to the opinion that nominal damages would be sufficient; the public have secured to them the use of the bridge, and the complainants are relieved from the duty of maintaining it. But of this question, I am not the judge. Yet, even if the compensation should be nominal, the complainants are entitled to be freed from the burthen of maintaining the bridge, which would else be upon them, and this is a sufficient substantial damage to entitle them to the interference of this court, if the case, in other respects, warrants it. If an assessment was made, the title to the bridge would not be vested in the defendants so as to enable them to sell or remove it, but only for the purpose of using, repairing, or re-building it, and they could be compelled to keep it in repair. And while they use it as part of their road, the county should be free from that burthen.

The first two continuous miles of the defendants' road were not completed, according to the provisions of the act, when they erected their toll-gate, and are not now completed. And although the complainants are not aggrieved by the taking of such toll, as they pay none, yet they are aggrieved

by the use of their property to make up that two miles. And as they have no other efficient remedy to redress this wrong, it is a proper case for the interposition of this court by injunction.

I am of opinion that the complainants are entitled to an injunction, restraining the defendants from using their bridge as part of the turnpike road, and from taking tolls for traveling on the two miles of their road next the Red Bank terminus, and from maintaining a turnpike gate thereon.